# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA STOKES,** | : | |
| *Petitioner* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT MARSH** *et al.*, | : | **No. 19-3019** |
| *Respondents* | : | |

## MEMORANDUM

PRATTER, J.                                                    MARCH __11ᵗʰ__, 2022

A prisoner might regret his trial strategy, but that does not warrant overturning his conviction. Joshua Stokes is serving a life sentence for stabbing a woman to death. Found to be faking mental illness to avoid trial, Mr. Stokes refused to sit in the courtroom and instead chose to watch the trial from his holding cell before he took the stand himself. Based on that decision, and several others, Mr. Stokes claims that the trial court violated his constitutional rights. Some of his claims are untimely. All are meritless. The Court thus adopts Magistrate Judge Marilyn Heffley's Report and Recommendation and denies Mr. Stokes's petition.

### BACKGROUND

#### I.    The Crime

Stephanie Clory went to Joshua Stokes's house just before midnight to borrow some money. Mr. Stokes confronted Ms. Clory about her new boyfriend and accused her of using him. He then grabbed a knife from the kitchen and stabbed her. Trying to escape, Ms. Clory opened the front door, but Mr. Stokes continued. Having bent the knife's blade, Mr. Stokes dropped it, grabbed another knife from the kitchen, and then resumed stabbing her. He threw the knife in a wastebasket in the kitchen and ran out the back door, leaving a trail of blood. Ms. Clory stumbled out onto the front steps, where she cried for help. She died shortly thereafter, having been stabbed 19 times.

Mr. Stokes went to his mother's house. He told his mother that he had stabbed someone because he was upset about her new boyfriend. Hours later, an officer showed up at the mother's house and found Mr. Stokes hiding behind boxes in the basement. He had left blood on the front door and splattered some above the kitchen sink while washing his hands. During an interview at the police station, Mr. Stokes admitted to stabbing Ms. Clory. *Commonwealth v. Stokes*, No. CP-51-CR-0000720-2011, slip op. at 1–5 (Pa. Ct. C.P. Feb. 26, 2016).

## II.    The Conviction

Mr. Stokes was charged with first-degree murder and possession of an instrument of crime. Initially, the trial court found him incompetent to stand trial and committed him to a state hospital. Four years later, a state psychiatrist re-evaluated him and explained that Mr. Stokes had been malingering; the trial court declared him competent to stand trial.

At the start of trial, Mr. Stokes moved *pro se* to suppress his confession to the police. The trial court denied his request, finding that his confession had been made voluntarily. After that, Mr. Stokes refused to return to the courtroom. He told the trial court that he did not want to be present for the trial and threatened to disrupt the proceedings if forced to be there. The trial court had a TV set up in the holding cell, and Mr. Stokes watched most of the trial from there. Mr. Stokes returned to the courtroom only to take the stand in his own defense.

The jury convicted him on both counts. He was sentenced to life in prison without the possibility for parole. *Commonwealth v. Stokes*, No. CP-51-CR-0000720-2011, slip op. at 1, 10–14 (Pa. Ct. C.P. Feb. 26, 2016).

## III.    The Direct Appeal

Mr. Stokes appealed to the Pennsylvania Superior Court. He asserted that there was not enough evidence that he has possessed the knife or that he had intentionally killed Ms. Clory.

2

*Commonwealth v. Stokes*, No. 3094 EDA 2016, 2017 WL 1438776, at \*2–3 (Pa. Super. Ct. Apr. 24, 2017). Instead, he insisted, he had committed at most voluntary manslaughter. *Id.* at \*3. The Superior Court disagreed. Because Mr. Stokes had stabbed Ms. Clory 19 times and had paused to grab another knife, he had "clearly … acted with malice and specific intent to kill." *Id.* That meant that he could not claim a heat-of-passion defense, for Ms. Clory had done nothing to provoke him. *Id.* at \*4.

Next, Mr. Stokes insisted that he had not been competent to stand trial. The Superior Court rejected this argument too. Mr. Stokes claimed that he "heard voices," but given that Mr. Stokes did not act as if he heard voices whenever his psychiatrist was not around, the trial court did not err in finding him capable of participating in his defense. *Id.* at \*4–5.

Finally, Mr. Stokes faulted the trial court for letting him remain in the holding cell for most of the trial. But, the Superior Court reasoned, in response to the trial court's inquiry, Mr. Stokes had knowingly and repeatedly waived his right to be present in the courtroom. *Id.* at \*6–7. So the court dismissed this challenge too.

Mr. Stokes sought leave to file a discretionary appeal with the Pennsylvania Supreme Court. His request was denied. *Commonwealth v. Stokes*, 172 A.3d 584 (Table) (Pa. 2017).

## IV.    Habeas

Mr. Stokes then moved for relief under Pennsylvania's Post Conviction Relief Act. He raised several new claims, including that the trial court pressured him into testifying. He was appointed PCRA counsel, but that counsel later moved to withdraw, explaining that he did not see any meritorious issues in the case. *See Commonwealth v. Finley*, 550 A.2d 213, 215 (Pa. Super. Ct. 1998). Mr. Stokes did not respond, and the PCRA court dismissed his petition as frivolous.

3

Mr. Stokes then appealed that dismissal. Dropping his prior claims, he raised entirely new ones. The Superior Court denied his appeal, finding that he had waived his new claims by not raising them earlier. *Commonwealth v. Stokes*, No. 1018 EDA 2018, 2019 WL 855693, at *2 (Pa. Super. Ct. Feb. 22, 2019).

Mr. Stokes then filed this federal habeas petition, raising some old and some new claims. In her Report and Recommendation, Magistrate Judge Heffley recommended denying relief.

## LEGAL STANDARDS

For a federal court to hear a habeas petition from a state prisoner, the prisoner must have first "exhausted the remedies available in" state court. 28 U.S.C. § 2254(b)(1)(A). If a prisoner fails to present a claim to the state court, he has procedurally defaulted that claim. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). To overcome this procedural default in federal habeas proceedings, the prisoner must show that he had good "cause" for his failure to raise the claim earlier and that he experienced "prejudice" from the underlying constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). On the other hand, if the prisoner did present the claim to the state court, the state court's ruling on that claim controls unless the state court blatantly erred on the facts or the law. Specifically, the state court decision must have been "contrary to, or involved an unreasonable application of, clearly established Federal law" or have been "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

## DISCUSSION

In his petition, Mr. Stokes attacks his murder conviction on seven different grounds: First, he insists that he was incompetent to stand trial. Second, he claims that his counsel should have moved to suppress his confession to the police. Third, he complains that he did not get to observe the trial. Fourth, he accuses the trial court of forcing him to take the stand. Fifth, he faults his trial

counsel for not requesting a jury instruction about his right not to testify. Sixth, he says that his sentence is unconstitutional. Finally, he blames his PCRA counsel for withdrawing.

In her Report and Recommendation, Judge Heffley found that some of the claims were procedurally defaulted and all were meritless. Mr. Stokes filed timely, though sparse, objections to the R&R.

The Court reviews his claims "de novo." 28 U.S.C. § 636(b)(1)(C).

## I.    The state court did not err in finding Mr. Stokes competent to stand trial

First, Mr. Stokes asserts that he should not have been forced to stand trial. Before being convicted of a crime, a defendant must be competent to stand trial. *Medina v. California*, 505 U.S. 437, 439 (1992). That is, he must be able to understand the nature of the proceedings, consult with his counsel, and participate in his own defense. *United States v. Gillette*, 738 F.3d 63, 76 (3d Cir. 2013). In Pennsylvania, the defendant is presumed competent until he proves otherwise. *Commonwealth v. Bomar*, 104 A.3d 1179, 1196 (Pa. 2014).

Immediately after his arrest, Mr. Stokes was institutionalized, having been deemed incompetent. Four years later, a board-certified psychiatrist examined Mr. Stokes and opined that he had been "feigning" mental illness and "attempting to appear psychotic, when, in fact, he was not." Jan. 12, 2015 Hearing Tr. 15:4–8. In addition to meeting with Mr. Stokes several times, the psychiatrist had spoken with prison personnel, reviewed Mr. Stokes's complaints against other prisoners, and listened to recordings of calls between Mr. Stokes and his mother.

In court and with doctors, Mr. Stokes exhibited bizarre behavior. He smeared toothpaste on his face and claimed that he had "demons" under his bed. *Id.* at 15:13–21. "[G]esturing and talking to the air," he would also claim that he heard voices. *Id.* at 25:19–21. He did not act like this when in his prison cell, when interacting with other inmates, or when speaking on the phone

with his mother. Based on this behavior, the psychiatrist opined that Mr. Stokes could both "understand[ ] the nature of the proceedings against him" and "participate and assist in his defense"; he was just pretending that he could not. *Id.* at 46:13–19, 47:14–21.

Mr. Stokes did not call a medical expert and instead testified on his own behalf, claiming that he did "[n]ot really" understand the case or the charges. Feb. 2, 2015 Hearing Tr. 15:12–19. Finding that Mr. Stokes had been "malingering," the trial court ruled him competent, explaining that Mr. Stokes "ha[s] the ability to cooperate" in his own defense but "has chosen" not to do so. *Id.* at 27:12–28:8.

Based on this record, the Superior Court concluded that the trial court did not abuse its discretion in finding Mr. Stokes competent to stand trial. *Stokes*, 2017 WL 1438776, at *5. This Court must respect that decision on the merits. To overcome it, Mr. Stokes would have to establish that the decision was contrary to, or an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). He has fallen short.

Mr. Stokes claims to have a learning disability, and says that he was "hearing voices and seeing things" at the trial. Doc. No. 1, at 27. He never mentioned this at the time of his trial. And he has provided no medical records to corroborate either a learning disability or hallucinations. Even if Mr. Stokes was suffering from hallucinations, that does not mean that he could not participate in his criminal case. *See United States v. Leggett*, 162 F.3d 237, 244 (3d Cir. 1998). To the contrary, Mr. Stokes clearly understood the proceedings and charges against him. He filed *pro se* motions to suppress, tried to strike a plea bargain with the prosecutors, and insisted on reviewing photographs of the crime scene himself. He took the stand to testify in his own defense. *Cf. id.* at 243–44 (defendant competent to stand trial, despite claims that he suffered from "brain damage"

and "schizophrenia," because he clearly understood basic legal concepts). The state court reasonably concluded that Mr. Stokes was competent to stand trial.

In another twist on this claim, Mr. Stokes also asserts, for the first time, that his trial counsel was ineffective for not mentioning his "mental health issues" during the competency hearing. Doc. No. 1, at 26. To be ineffective, trial counsel must have acted unreasonably. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Mr. Stokes had no official diagnoses at the time of the competency hearing, nor has he shown that he would have been officially diagnosed with serious mental health issues had he been examined by an independent medical examiner at the time. (The board-certified psychiatrist who examined him for the state found none). Absent an official diagnosis, counsel chose to emphasize Mr. Stokes's erratic behavior, arguing that though he might act normally sometimes, that did not mean that he was sufficiently "lucid[ ]" to stand trial. Feb. 2, 2015 Hearing Tr. 26:13–15. Given the minimal evidence at his disposal, counsel acted well within professional norms. So the ineffective-assistance-of-counsel claim fails too.

## II.   The trial court did not err in finding that Mr. Stokes voluntarily confessed

Second, Mr. Stokes calls his counsel ineffective for not moving to suppress his confession to the police. Under the Fifth Amendment, a suspect cannot be interrogated until he is given certain warnings and has chosen to proceed without an attorney present. *Miranda v. Arizona*, 384 U.S. 436, 467–475 (1966). To hear Mr. Stokes tell it, the police tased him in the transport van and then, once at the police station, failed to read him his *Miranda* rights and refused his request for a lawyer. That, Mr. Stokes says, made his confession involuntary and his counsel ineffective for not moving to suppress the confession.

As the trial court explained once before, the police did not violate Mr. Stokes's Fifth Amendment rights. Before trial, Mr. Stokes filed several *pro se* motions to suppress his statements to the police. After hearing from the police officers and Mr. Stokes, the court decided that the

confession had been voluntary. The transporting officers testified that they simply handcuffed Mr. Stokes and then drove him to the police station. They were not even carrying tasers. The interviewing officer said that he had informed Mr. Stokes of his *Miranda* rights, and that Mr. Stokes had declined a chance to speak with an attorney. Indeed, Mr. Stokes signed a form stating that he understood his *Miranda* rights and was choosing to waive them. For these reasons, the court found Mr. Stokes's story that he had been tased and denied a lawyer "incredible," and decided that he had instead "made a knowing, conscious, deliberate decision to waive" his *Miranda* rights.

Seeking to relitigate this loss, Mr. Stokes now claims that his trial counsel was ineffective for not trying to suppress his confession, forcing him to file a *pro se* motion. To get a new trial based on ineffective assistance of counsel, the prisoner must prove that his counsel erred and that, had counsel not erred, there is a reasonable probability that the prisoner would have been acquitted. *Strickland*, 466 U.S. at 694.

Mr. Stokes's trial counsel did not err in refusing to move to suppress the statement, for such a motion would have been meritless. The trial court found that Mr. Stokes voluntarily confessed after willingly waiving his right to counsel. This Court must presume that finding is correct unless Mr. Stokes can prove his version of the interrogation by "clear and convincing evidence." *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017) (internal quotation mark omitted). He has not even attempted to do so.

Even if trial counsel should have stepped in to try to suppress the conviction, that would not have changed the outcome of the trial. Ms. Clory was stabbed 19 times in Mr. Stokes's entryway. Mr. Stokes was then found hiding in his mother's basement, with Ms. Clory's blood on his shoes. Plus, Mr. Stokes had already confessed to his mother, and that confession was read to

the jury. His confession to the police simply bolstered the overwhelming evidence against him. Because Mr. Stokes's Fifth Amendment claim is meritless, his trial counsel was not ineffective for refusing to advance it. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

Either way, his ineffective-assistance-of-trial-counsel claim is too late. As Judge Heffley explained in the R&R, Mr. Stokes did not raise this ineffective-assistance-of-trial-counsel claim on direct appeal or in his PCRA petition, and it is now too late to do so, making the claim procedurally defaulted.

To get around this default, Mr. Stokes next blames his PCRA counsel for failing to raise his ineffective-assistance-of-trial-counsel claim earlier. But, for that to count as good cause to excuse his untimeliness, Mr. Stokes must show that his PCRA counsel was constitutionally ineffective. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Given that the ineffective-assistance-of-trial-counsel claim was meritless, his PCRA counsel was not ineffective for failing to raise it. Mr. Stokes's Fifth Amendment claim thus fails on the procedure and the merits.

**III.   The trial court did not err in permitting Mr. Stokes to watch the trial from his holding cell**

Third, Mr. Stokes claims that the trial court "lock[ed] [him] in a holding cell with a close[d] [circuit] TV with audio that did not function correctly," thus denying him his right to be present at trial. Doc. No. 1, at 27. No doubt, defendants have a constitutional right to be present at all critical stages of a trial. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). That right can be waived, however, so long as the waiver is knowing and voluntary. *Taylor v. United States*, 414 U.S. 17, 19–20 (1973) (per curiam).

After the jury had been selected in his case, Mr. Stokes refused to return to the courtroom. The court then informed him that he had a right to be present and warned him that he was giving up his chance to personally confront witnesses and to consult with his counsel. Mr. Stokes said he

was "confused." Dec. 8, 2015 Trial Tr. 95:16–24. The court then explained his rights again, and Mr. Stokes then said that he understood his rights and decided to remain in the holding cell. The trial court had equipment set up in Mr. Stokes's cell so he could see and hear the trial. The trial court also instructed jurors that, though Mr. Stokes had chosen not to be present in the courtroom, they "must not draw any inference of guilt" from that. Dec. 8, 2015 Trial Tr. 111:6–12. Mr. Stokes watched nearly the entire trial from his cell. The video equipment malfunctioned several times. Each time, the trial court paused the proceedings until the equipment started working again. The trial court also repeatedly asked Mr. Stokes if he wanted to return to the courtroom, which he refused.

On direct appeal, Mr. Stokes complained that the trial court had let him remain in his holding cell. The Superior Court rejected his argument. Twice, the trial court had explained to Mr. Stokes his right to be present and the risk that his absence posed. Mr. Stokes acknowledged this and still chose to watch from a holding cell. The trial court later gave him several chances to change his mind, but he still refused to come into the courtroom. Based on this, the Superior Court reasoned, though Mr. Stokes "obviously *now* regrets [his] decision" not to be present for the trial, "there is no evidence that his waiver *then* was anything other than knowing and voluntary." *Stokes*, 2017 WL 1438776, at *7. This Court must defer to that (correct) decision. 28 U.S.C. § 2254(d).

### IV.   The state court did not err in finding that Mr. Stokes took the stand of his own accord

Fourth, Mr. Stokes says that the trial court "threatened" him into taking the stand in his own defense. Doc. No. 1, at 28. At the beginning of the trial, the trial court informed Mr. Stokes that he "ha[d] no obligation to testify," and told the jury that they could not "hold [his decision to testify or not] against [him] in any manner." Dec. 7, 2015 Trial Tr. 33:15–18. Later, once the prosecution closed its case, the trial court offered Mr. Stokes the chance to testify. The court

explained: "You have an absolute right to testify. It is your decision and your decision alone. [Counsel] can advise you, but you're the one that has to make the decision whether or not to testify." Dec. 10, 2015 Trial Tr. 212:14–18. Mr. Stokes chose to take the stand. Almost immediately, he told the court that he changed his mind. He changed it at least once more. The court then tried to clarify his decision:

> The Court: Are you making that decision of your own free will, sir?
>
> Mr. Stokes: No.
>
> The Court: Who is forcing you to give up your right to testify, if anyone?
>
> Mr. Stokes: I changed my mind. I'm going to testify."

*Id.* at 214:14–20. The court then brought the jury out, and Mr. Stokes testified.

That is not coercion. To the contrary, as the PCRA court explained, "Mr. Stoke's decision to testify was made of his own free will after [a] hearing and [after a] clear and accurate colloquy from [the] Court. [Mr. Stokes] knew that the decision to testify was his and his alone. Ultimately, [Mr. Stokes] waived his right to remain silent, and the jury did not credit his testimony. [He] cannot now claim that his testimony was coerced, based on an adverse result at trial." *Commonwealth v. Stokes*, No. CP-51-CR-0000720-2011, slip op. at 6 (Pa. Ct. C.P. Apr. 19, 2018).

Building on this, Mr. Stokes also complains that none of his counsel objected to the court's "incomplete" jury instruction about his right not to testify. Doc. No. 1, at 27. Mr. Stokes never raised this claim in state court, making it procedurally defaulted. It is also meritless. Mr. Stokes has not explained how exactly the instruction was "incomplete." Besides, as the R&R notes, Mr. Stokes did testify, making any instruction about his right *not* to testify unnecessary.

## V.    The trial court did not err in imposing a life sentence

Next, Mr. Stokes objects that his sentence was "unconstitutional" because he "was not convicted under any type of Pennsylvania statutes," and his sentence for life imprisonment without parole is "unstruct[ured]" and "void for vagueness." Doc. No. 1, at 27; Doc. No. 32, at 2. This claim too was not raised in state court and so was procedurally defaulted.

It also fails on the merits. Mr. Stokes was charged and convicted for first-degree murder, a crime under 18 Pa. Cons. Stat. § 2502(a). That carries with it a mandatory minimum sentence of life imprisonment without the possibility of parole. 18 Pa. Cons. Stat. § 1102(a)(1). He was also convicted for possession of an instrument of crime (*i.e.*, the knives), a crime under 18 Pa. Cons. Stat. § 907(a). For that, he was sentenced to between six months and a year in prison, to run at the same time as his life sentence. That sentence is neither unstructured nor vague.

## VI.    Mr. Stokes cannot state a standalone claim for ineffective assistance of habeas counsel

Finally, Mr. Stokes accuses his PCRA counsel of being ineffective. Initially, the Commonwealth appointed PCRA counsel for Mr. Stokes. Counsel promptly asked to withdraw, explaining that he saw no meritorious challenges to the conviction. Mr. Stokes now complains that his counsel did so "without even trying to help [him]." Doc. No. 1, at 27.

As the R&R explains, that is not a proper claim for habeas relief. Though criminal defendants have a constitutional right to counsel during trial and on direct appeal, they have no right to counsel in collateral post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555–56 (1987). That means that a defendant cannot seek a new trial based on ineffective assistance of PCRA counsel: he has no right to PCRA counsel, let alone "effective" PCRA counsel. Besides, counsel have an ethical duty not to advance frivolous arguments. Thus, if PCRA counsel does not

identify any meritorious claims, he is permitted to withdraw, of course with the prisoner still free to advance any arguments he chooses. *Finley*, 550 A.2d at 215. That is what happened here.

CONCLUSION

Faced with overwhelming evidence against him, Mr. Stokes faked psychosis and then sat in a holding cell instead of the courtroom for nearly his entire trial. He has identified no constitutional errors. The Court thus overrules his objections and adopts the R&R in full. Because reasonable jurists would not "find it debatable" that Mr. Stokes procedurally defaulted his meritless claims, the Court will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE